**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| *In re*: | Chapter 11 |
| Cutera, Inc., *et al.*,[1] | Case No. 25-90088 (ARP) |
| Debtors. | |

**EMERGENCY MOTION OF SECURITIES LITIGATION LEAD PLAINTIFF FOR ENTRY OF AN ORDER (I) AUTHORIZING THE LEAD PLAINTIFF TO OPT OUT OF THIRD-PARTY RELEASE ON BEHALF OF THE CLASS OR CONFIRMING SUCH AUTHORITY OR, ALTERNATIVELY, (II) CERTIFYING THE CLASS FOR A LIMITED PURPOSE**

**Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (Central Time) on April 16, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on April 16, 2025 at 4:00 p.m. (Central Time) in Courtroom 400, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Perez's home page. The meeting code is "JudgePerez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cutera, Inc. (2262) and Crystal Sub, LLC (6339). The Debtors' service address is 3240 Bayshore Boulevard, Brisbane, CA 94005.

New England Teamsters Pension Fund ("Lead Plaintiff"), the court appointed lead plaintiff in the securities class action captioned as *In re Cutera, Inc. Securities Litigation,* No. 4:23-cv-02560-JST (N.D. Cal.) (the "Securities Litigation") pending in the United States District Court for the Northern District of California, Oakland Division (the "District Court"), hereby submits this motion (the "Motion") for entry of an order, substantially in the form annexed hereto as **Exhibit B**, (a) confirming that Lead Plaintiff has authority, or authorizing Lead Plaintiff (to the extent such authorization is necessary), on behalf of the class in the Securities Litigation (as described below, the "Class" and the members thereof, the "Class Members"), to opt out of the third-party release (as described below, the "Third-Party Release") contained in the *Joint Prepackaged Chapter 11 Plan of Reorganization of Cutera, Inc. and its Affiliated Debtors* (the "Plan") [D.I. 7] filed by the above-captioned debtors in possession (the "Debtors") or, in the alternative, (b) applying Bankruptcy Rule 7023 and certifying the Class for the sole and limited purpose of permitting Lead Plaintiff to opt out of the Third-Party Release on behalf of the Class and all Class Members.  In support of this Motion, Lead Plaintiff respectfully states as follows:

### PRELIMINARY STATEMENT[2]

1.      The Third-Party Release seeks to completely disenfranchise Class Members, stripping them of their claims against the Non-Debtor Defendants with no due process whatsoever. Even though Class Members are receiving nothing under the Plan, are not entitled to vote, and are deemed to reject the Plan, the Plan nevertheless seeks to foist upon them an affirmative duty to speak—where none otherwise exists—to avoid forfeiting their claims against the Non-Debtor Defendants, the only remaining source of recovery for their substantial losses on the Debtors' securities.  To make matters even worse, the order approving the Debtors' proposed procedures

---

[2]   Capitalized terms used but not defined in this Preliminary Statement or above have the meanings given below.

for notifying holders of claims against and interests in the Debtors contain no mechanism for giving Class Members notice that the Plan requires them to affirmatively act to avoid being deemed to have "consented" to the Third-Party Release in exchange for no consideration at all.[3]

2. As court-appointed lead plaintiff and fiduciary for the Class, Lead Plaintiff has inherent authority to opt out of the Third-Party Release on behalf of the Class and thereby preserve the claims of the Class against the Non-Debtor Defendants in the Securities Litigation. In the Lead Plaintiff Order, the District Court granted Lead Counsel authority to, among other things, "speak for all Plaintiffs and Class [M]embers in all matters regarding the [Securities L]itigation[.]" Protecting the claims and causes of action of Class Members from being gratuitously released through the Third-Party Release—the functional equivalent of defending against a motion to dismiss—is squarely within the province and fiduciary duty of Lead Plaintiff and Lead Counsel under the Lead Plaintiff Order. Nonetheless, out of an abundance of caution, Lead Plaintiff seeks an order confirming (or, to the extent the Court deems appropriate, granting) such authority. Alternatively, to the extent necessary, Lead Plaintiff seeks certification of the Class pursuant to Bankruptcy Rules 7023 and 9014 and Federal Rule 23 for the sole and limited purpose of permitting Lead Plaintiff to opt out of the Third-Party Release on behalf of the entire Class.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]  Lead Plaintiff reserves all rights with respect to the Plan and the Third-Party Release, including but not limited to the right to object to confirmation of the Plan on any basis whatsoever. For the avoidance of doubt, this Motion is not, and may not be construed as, an objection to confirmation of the Plan or approval of the Third-Party Release or an election by Lead Plaintiff to opt out of the Third-Party Release in their individual capacity in the absence of a Class-wide opt out.

4.     The statutory predicates for the relief requested herein are Rules 7023 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure.

**BACKGROUND**

**I.     The Securities Litigation**

5.     The Securities Litigation is a securities class action that commenced in the District Court on May 24, 2023.

6.     On August 30, 2023, the District Court entered an order (the "Lead Plaintiff Order") [Sec. Lit. Doc. No. 41] appointing Lead Plaintiff and appointing Labaton Keller Sucharow LLP as lead counsel ("Lead Counsel").  A true and correct copy of the Lead Plaintiff Order is annexed hereto as **Exhibit A**.  Among other things, the Lead Plaintiff Order states that

> Lead Counsel **shall have the authority to speak for all Plaintiffs and Class [M]embers in all matters regarding the [Securities L]itigation**, including, but not limited to, pretrial proceedings, motion practice, trial, and settlement.

Lead Plaintiff Order, ¶ 6 (emphasis added).

7.     On May 10, 2024, Lead Plaintiff filed the *Amended Class Action Complaint for Violation of the Federal Securities Laws* (the "Amended Complaint") [Sec. Lit. Doc. No. 59] against Cutera, Inc. ("Cutera"), as well as several of Cutera's former and current senior executives—David Mowry, Rohan Seth, J. Daniel Plants, Sheila Hopkins, Taylor Harris, Stuart Drummond, and Vikram Varma (collectively, the "Non-Debtor Defendants," and together with Cutera, the "Defendants").

8.     The Amended Complaint generally alleges that the Defendants made materially false and misleading statements and omissions related to the roll-out of Cutera's new acne-treating laser device, AviClear, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of

4

1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Pursuant to the Amended Complaint, the Class consists of all persons and entities that, during the period from March 1, 2022 through March 21, 2024, inclusive, purchased the publicly traded common stock of Cutera and were damaged thereby.[4]  *See* Amended Complaint ¶ 470.

9.      On July 8, 2024, the Defendants filed a motion to dismiss the Amended Complaint (the "Motion to Dismiss") [Sec. Lit. D.I. 72].

10.     On September 9, 2024, Lead Plaintiff filed its opposition to the Motion to Dismiss [Sec. Lit. D.I. 76].

11.     On October 9, 2024, the Defendants filed a reply in support of the Motion to Dismiss [Sec. Lit. D.I. 77].

12.     On October 31, the District Court cancelled the hearing on the Motion to Dismiss and indicated that the matter was suitable for disposition without oral argument.  At the time of filing this Motion, however, no decision or order has been entered.

13.     On March 13, 2025, the Defendants filed *Cutera Inc.'s Suggestion of Bankruptcy and Notice of Stay* [Sec. Lit. D.I. 79] (the "Suggestion of Bankruptcy") in the Securities Litigation.

14.     On March 18, 2025, the District Court entered an order administratively dismissing the Securities Litigation *sua sponte* without prejudice [Sec. Lit. D.I. 80] (the "Administrative Dismissal Order").

15.     On March 20, 2025, Lead Plaintiff filed a statement in the Securities Litigation with respect to the Suggestion of Bankruptcy and the Administrative Dismissal Order [Sec. Lit. D.I. 81]

---

[4]    Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer, director, or control person of Cutera during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Cutera's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person. *See* Amended Complaint ¶ 470.

(the "Statement"), explaining that the automatic stay only protects Cutera, not any other defendants.

16.     On March 21, 2025, the District Court filed an order requiring the Defendants to file a response to Lead Plaintiff's Statement by no later than March 28, 2025.

## II.     Relevant Bankruptcy Proceedings

17.     On March 5, 2025, Cutera and an affiliate (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

18.     On March 5, 2025, the Debtors filed the Plan and a proposed disclosure statement (the "Disclosure Statement") [D.I. 6].  On March 6, 2025, the Court entered an order (the "Confirmation Procedures Order") [D.I. 82] scheduling a combined hearing (the "Combined Hearing") on the adequacy of the Disclosure Statement and confirmation of the Plan, establishing related dates and deadlines, and approving related procedures.  Relevant to this Motion, the Confirmation Procedures Order approved forms and procedures (the "Opt-Out Procedures") for holders of claims against and interests in the Debtors to opt out of the Third-Party Release (defined below).

19.     The Combined Hearing is currently scheduled for April 16, 2025 at 4:00 p.m., Central Time.  Lead Plaintiff seeks to have this Motion heard the same day as, but immediately before, the Combined Hearing.  Pursuant to the Confirmation Procedures Order, the opt-out deadline is currently scheduled for April 9, 2025 at 4:00 p.m., Central Time (the "Opt-Out Deadline").

### III.    The Third-Party Release

20.    Section 9.3(b) of the Plan contains a deemed release (the "Third-Party Release") of numerous non-Debtor third parties' claims against a myriad of other non-Debtors, providing as follows in relevant part:

> As of the Effective Date . . . each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, their estates, and the Released Parties, in each case on behalf of themselves and their respective successors and assigns, representatives, and any and all other persons that may purport to assert any cause of action derivatively, by or through the foregoing persons, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims or causes of action asserted or that may be asserted on behalf of the Debtors or their estates, that such entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest. . .  based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to . . .  the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of or Claim against the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, …the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the reorganized common equity), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.

See Plan, Section 9.3(b).

21.    Through a Byzantine maze of definitions in the Plan, it appears that each Non-Debtor Defendant likely will be gratuitously released through the Third-Party Release.

22.    First, the "Releasing Parties" deemed to grant the Third-Party Release include, among numerous others, ". . . all Holders of Claims or Interests that . . . *are deemed to reject the Plan and who do not affirmatively opt out* of the releases provided by the Plan . . ." See Plan, Section 1.1(131) (emphasis added).  The claims of Lead Plaintiff and the Class Members against

7

the Debtors arise from purchases or sales of securities of Cutera, and thus are classified in Class 7, "Section 510(b) Claims." *See* Plan, Section 1.1(145).[5]  Holders of claims in Class 7, such as Lead Plaintiff and the Class, are receiving no distribution under the Plan, and thus are deemed to reject the Plan. *See* Plan, Section 3.3(h).  Based upon the definition of Releasing Parties, Lead Plaintiff and Class would be deemed to grant the Third-Party Release unless they take affirmative steps to opt out.  Accordingly, the Plan, as currently written, attempts to deprive members of the Class of any remedy for the Non-Debtor Defendants' wrongdoing, even though they will receive absolutely nothing under the Plan and even though they have been and will be given no notice of the Chapter 11 Cases, the Plan, the Third-Party Release, or the Opt-Out Procedures.

23.     The "Released Parties" that stand to benefit from the Third-Party Release comprise a sweeping universe including, among numerous others, the Debtors' current and former directors, managers, officers, shareholders, equity holders, principals, and members. *See* Plan, Section 1.1(129).  In addition, certain "Related Parties" of other Released Parties are themselves Released Parties.  *See* Plan, Section 1.1(128), (129).

24.     The Plan also contains an injunction (the "<u>Plan Injunction</u>") purporting to bar all parties who have held or hold Released Claims from, among other things:

> (1) commencing, conducting, or continuing in any manner, directly or indirectly, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action. . . and (5) commencing, conducting, or continuing in any manner, directly or indirectly, any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

*See* Plan, Section 9.5.

---

[5]     The Disclosure Statement and certain related materials erroneously list Section 510(b) Claims as Class 8.

25.     To ascertain whether claims against the Non-Debtor Defendants in the Securities Litigation are released by the Third-Party Release, absent Class Members would have to (a) first be aware of the Debtors' bankruptcy filing and the Securities Litigation, (b) understand that they have claims against Cutera in the Securities Litigation, (c) locate and review the lengthy and complex Plan, (d) interpret a maze of interconnected defined terms, (e) locate, review, and comprehend the Opt-Out Procedures and ascertain therefrom that creditors may be required to affirmatively opt out of the Third-Party Release *even if they are receiving nothing under the Plan*, and finally, (f) opt out of the Third-Party Release on or before the Opt-Out Deadline, all in the context of a confirmation process being conducted on an extremely compressed timeline.

26.     This complicated, convoluted process for engineering "consent"—particularly where Class Members are receiving no actual notice of the Chapter 11 Cases, the Plan, the Third-Party Release, or the Opt-Out Procedures—is the very reason why Lead Plaintiff must confirm its authorization, in furtherance of its statutory obligations and fiduciary duties to members of the Class and the authority granted under the Lead Plaintiff Order, to opt out of the Third-Party Release on behalf of the Class and ensure that the rights and claims of Class Members are preserved.

## RELIEF REQUESTED

27.     By this Motion, Lead Plaintiff respectfully requests that the Court enter an order (a) confirming Lead Plaintiff's authority, or providing authority (to the extent authorization is necessary), to opt out of the Third-Party Release on behalf of the Class or, in the event the Court declines to grant such relief in the absence of certification of the Class in this Court, (b) certifying the Class for the sole and limited purpose of permitting Securities Plaintiffs, on behalf of the Class, to opt out of the Third-Party Release.

**BASIS FOR RELIEF REQUESTED**

## I.   LEAD PLAINTIFF HAS AUTHORITY, OR SHOULD BE AUTHORIZED, TO OPT OUT OF THE THIRD-PARTY RELEASE ON BEHALF OF THE CLASS.

28.    Lead Plaintiff, like all class representatives in federal class-action litigation, is a fiduciary for all absent Class Members.  *See, e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) ("Class representatives are . . . fiduciaries of the class members. . . ."); *Schick v. Berg*, No. 03 Civ. 5513 (LBS), 2004 WL 856298, *4 (S.D.N.Y. Apr. 20, 2004), *aff'd,* 430 F.3d 112 (2d Cir. 2005) ("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class, commencing with the filing of a class complaint.") (citation omitted); *cf. In re Gen. Motors Corp. Pick-Up Truck Fuel Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."). That duty indisputably applies where, as here, a plaintiff has been appointed as lead plaintiff.  *See, e.g.*, *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (finding that a class representative "owes continuing fiduciary obligations to the class it represents" even in separate proceedings); *Sondel v. Nw. Airlines*, 56 F.3d 934, 938–39 (8th Cir. 1995) ("Thus, the certified representatives and the class counsel had fiduciary responsibilities to the Class when prosecuting the state court action. . . . We do not believe that these duties are confined to the four corners of the federal lawsuit.").

29.    As a fiduciary, Lead Plaintiff has not only the *ability* to take necessary actions to protect the rights of absent Class Members, but an affirmative *obligation* to do so.  The same duty applies to Lead Counsel, which "must fairly and adequately represent the interests of the [Certified C]lass." Fed. R. Civ. P. 23(g)(4).  Nowhere are these duties more essential than in connection with the Third-Party Release, which threatens to eviscerate Class Members' claims against the Non-

10

Debtor Defendant.  The relief that Lead Plaintiff seeks through this Motion is no different from opposing a motion to dismiss—an action it unquestionably has the power to take.

30.     To enable Lead Plaintiff to fulfill its statutory obligations and fiduciary duties to the Class and prevent the Debtors from unilaterally eliminating Class Members' claims against the Non-Debtor Defendants, the Court should authorize Lead Plaintiff (or confirm its authority)[6] to opt out of the Third-Party Release on behalf of the entire Class.

31.     The relief Lead Plaintiff seeks is also within its inherent powers and the authority granted to Lead Counsel under the Lead Plaintiff Order and does not expand upon its rights in any way, nor does it prejudice the Debtors—it simply enables Lead Plaintiff to do what it is obligated to do to take the necessary steps to preserve Class Members' rights and claims from being released through the Plan.

32.     Lead Plaintiff solely intends to preserve rights that Class Members, under the circumstances, are in no position to protect by themselves.  Lead Plaintiff is not seeking from this Court a determination on the merits of Class Members' claims against the Debtors or the Non-Debtor Defendants, nor to bind Class Member to any result in the Securities Litigation.  Rather, Lead Plaintiff seeks only the ability to safeguard Class Members' rights so they can decide for themselves whether to participate in the Securities Litigation when the appropriate time comes.

---

[6]     Bankruptcy Rule 9010(c), which requires a power of attorney as evidence of the authority of an agent "to represent a creditor for any purpose *other than* the execution and filing of a proof of claim *or the acceptance or rejection of a plan*[,]" also implies, if not indicates, that Lead Plaintiff has the authority to opt out of the Third-Party Release on behalf of the Class because the opt-out process is integrated with confirmation of the Plan.

## II.  ALTERNATIVELY, THE COURT SHOULD CERTIFY THE CLASS TO PERMIT LEAD PLAINTIFF TO OPT OUT ON BEHALF OF THE CLASS.

### A.  Class Certification is Appropriate in a Bankruptcy Proceeding.

33.     Bankruptcy Rule 7023 makes Federal Rule of Civil Procedure 23 applicable in certain bankruptcy proceedings.  Bankruptcy Rule 9014(c) provides this Court with discretion to decide whether to invoke Bankruptcy Rule 7023 in a contested matter, such as this Motion.  *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 62 (Bankr. D. Del. 2002); *In re United Co. Fin. Corp.*, 276 B.R. 368, 372 (Bankr. D. Del. 2002); *In re Musicland Holdings Corp.*, 362 B.R. 644, 650 (Bankr. S.D.N.Y. 2007); *Iles v. LTV Aerospace & Defense Co. (In re Chateaugay Corp.)*, 104 B.R. at 626, 633 (S.D.N.Y. 1989).

34.     A broad majority of courts have concluded that class proofs of claim, the context in which class certification under Bankruptcy Rule 7023 most commonly arises, are permissible in bankruptcy proceedings.  *See, e.g.*, *Reid v. White Motor Corp.*, 886 F.2d 1462, 1469 (6th Cir. 1989); *In re Charter Cos.*, 876 F.2d 866, 873 (11th Cir. 1989); *In re Am. Reserve Corp.*, 840 F.2d 487, 493 (7th Cir. 1988); *In re Zenith Lab'ys, Inc.*, 104 B.R. 659, 662 n.2 (D.N.J. 1989); *Chateaugay*, 104 B.R. at 629; *In re First Interregional Equity Corp.*, 227 B.R. 358, 366 (Bankr. D.N.J. 1998); *In re Woodward*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995).  The relief Lead Plaintiff seeks here is even more limited than the class certification customarily sought in connection with the allowance of a class proof of claim, which would be meaningless here because Class 7 is receiving nothing under the Plan.

35.     A proponent of class certification in the context of a contested matter must first establish that Bankruptcy Rule 7023 should apply.  *In re Musicland*, 362 B.R. at 651; *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 4–5 (S.D.N.Y. 2005).  The rules in Part VII of the Bankruptcy

Rules, including Bankruptcy Rule 7023, apply automatically in adversary proceedings, and may also be applied in contested matters under Bankruptcy Rule 9014. *Woodward*, 205 B.R. at 369. A contested matter is a dispute between parties, typically brought by way of a motion. Bankruptcy Rule 9014(c) provides that the "court may *at any stage* in a particular matter direct that one or more of the *other rules in Part VII shall apply*." (Emphasis added). Thus, the Court can invoke Bankruptcy Rule 7023 in connection with a contested matter. *See Charter Cos.*, 876 F.2d at 874; *see generally Am. Reserve*, 840 F. 2d at 488; *Chateaugay*, 104 B.R. at 633–34.

36.     A party may move for class certification at any time after the petition has been filed, thereby creating the requisite contested matter to apply Rule 23 and Bankruptcy Rule 7023, through Bankruptcy Rule 9014. *See, e.g.*, *Woodward*, 205 B.R. at 370 (citing *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y. 1981)); *Sanders v. Faraday Lab'ys., Inc.*, 82 F.R.D. 99, 102 (E.D.N.Y. 1979). Thus, this Motion creates the requisite contested matter sufficient to apply Bankruptcy Rule 7023, and thus Rule 23.[7]

### A.     The *Musicland* Factors Are Satisfied.

37.     Courts apply a two-step analysis to determine whether to certify a class in the context of a bankruptcy case. *In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017). First, the Court must make the threshold decision of whether it is beneficial to apply Rule 7023, via Bankruptcy Rule 9014(c), to a contested matter. *Id.* Second, if the Court determines in the first step that applying Bankruptcy Rule 7023 is appropriate, the Court then must determine

---

[7]   Absent a favorable and timely resolution of this Motion, Lead Plaintiff also reserves the right to object to confirmation of the Plan, which would create another contested matter. If the Court finds that this Motion does not create the requisite contested matter to invoke Bankruptcy Rule 7023, Lead Plaintiff respectfully requests that the Court extend the Opt-Out Deadline with respect to the opt-out election for Lead Plaintiff and the Class through confirmation of the Plan.

whether the class certification requirements of FRCP 23 have been satisfied. *Id.*; *see also Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012).

38.     The first step of the Bankruptcy Rule 7023 analysis is a discretionary decision to be made by a Bankruptcy Court. *Chaparral Energy*, 571 B.R. at 646. This Court's discretionary analysis focuses on "whether the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures." *Gentry*, 688 F.3d at 93. In making that determination, courts generally balance three factors (the "*Musicland* Factors"): (1) whether the class was certified pre-petition, (2) whether members of the putative class received notice of the relevant proceeding (typically a bar date), and (3) whether class certification will adversely affect the administration of the estate. *In re Musicland*, 362 B.R. at 654.

39.     Although the Class has not yet been certified by the District Court, the second and third *Musicland* factors are easily satisfied here.

40.     The second factor, whether the members of the Class received actual notice of a proceeding that threatens their rights (typically a claims bar date; here, the Opt-Out Deadline), is of critical importance here because the Debtors have failed to provide constitutionally mandated actual notice of the Opt-Out Deadline to members of the Certified Class. *See, e.g.*, *Chaparral Energy*, 571 B.R. at 646 ("The second *Musicland* factor weighs in favor of applying Bankruptcy Rule 7023 to the Class Claims as not all putative class members were served with notice of the Bar Date.").

41.     Class Members are known creditors entitled to actual notice of the Opt-Out Deadline. *See Richmond v. United States*, 172 F.3d 1099, 1103 (9th Cir. 1999) ("***Actual notice is a minimum constitutional precondition*** to a proceeding which will adversely affect the liberty or property interests' of a creditor in bankruptcy.") (citation omitted); *In re Drexel Burnham Lambert*

14

*Group, Inc.*, 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993) (known creditors are entitled to actual notice of proceedings threatening their rights in bankruptcy cases); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 166–67, 166 n.5 (1974) (describing a customary procedure for providing actual notice to over two million stock purchasers by obtaining their names and addresses from their intermediary brokers); *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS, at *19–*20 (N.D. Cal. Dec. 11, 2016) (describing court-ordered process for providing actual notice to absent members of class of securities purchasers based on issuer's transfer records and through "street name" nominee brokers); *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, *19–*20 (C.D. Cal. July 28, 2014) (same).

42.     As evidenced by the Confirmation Procedures Order and the affidavits of service filed in the Chapter 11 Cases to date, the Debtors have made no effort whatsoever to provide actual notice of the Opt-Out Deadline to members of the Class.  Accordingly, the second *Musicland* factor is easily satisfied.

43.     The third *Musicland* factor, the impact of class certification on the administration of the estate, also supports invoking Bankruptcy Rule 7023.  Pursuant to this factor, courts may decline to apply Rule 23 to a contested matter if doing so would "'gum up the works' of distributing the estate." *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014).  Here, certification of the Class solely to enable Lead Plaintiff to opt out on behalf of the Class will not affect the plan process or administration of the estate at all, much less "gum up the works."  Lead Plaintiff is not seeking class certification for any purpose other than to ensure Lead Plaintiff can opt out of the Third-Party Release on behalf of the Class.  Simply put, certification of the Class as requested in this Motion will have no impact whatsoever on the estate.  Accordingly, the third *Musicland* factor is also easily satisfied.

B.      **The Requirements for Class Certification Are Satisfied.**

44.     Having established grounds for the Court to apply Bankruptcy Rule 7023, Lead Plaintiff must next satisfy the requirements for class certification under Rule 23. *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir. 2001); *Georgine v. Amchem Prod., Inc.,* 83 F.3d 610 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 248 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011 (1975).  That burden is easily satisfied here.

45.     A party seeking class certification must demonstrate that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.  Rule 23(a) provides that a class member may maintain a class action as a representative of a class if the member establishes that:

(i)      the class members are so numerous that joinder of all members is impracticable (numerosity);

(ii)     the action addresses questions of law or fact common to the class (commonality);

(iii)    the claims or defenses of the class representatives are typical of the claims or defenses of the class (typicality); and

(iv)     the class representative parties will fairly and adequately protect the interests of the class (adequacy).

Fed. R. Civ. P. 23(a).

46.     Lead Plaintiff is seeking certification of the Class for an extremely limited purpose, solely to enable Lead Plaintiff to opt out of the Third-Party Release on behalf of the Class.  This purely protective act will ensure that absent Class Members are not improperly and unjustly stripped of their rights and will have no impact whatsoever on the Debtors' estates.  Accordingly, Lead Plaintiff's burden with respect to the requirements for certification of the Class for the limited purpose sought herein is significantly lower than the burden necessary to certify a class for the

16

purposes of asserting a class claim.  As described below, the circumstances here satisfy all four requirements under Rule 23(a).

          **(i)**      **Numerosity is Satisfied.**

47.     The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable."  Rule 23(a)(1).  Numerosity does not require that joinder be impossible but instead dictates that joinder of all the parties is impracticable when the procedure would be "inefficient, costly, time-consuming, and probably confusing."  *Ardrey v. Fed. Kemper Ins. Co.*, 142 F.R.D. 105, 111 (E.D. Pa. 1992) (citation omitted).  A court may make "common sense assumptions" to support a finding of numerosity.  *Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D. Pa. 1987) (quoting *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D. Pa. 1979)).

48.     This matter readily meets the numerosity requirement.  As stated in the Amended Complaint "the members of the Class are so numerous that joinder of all members is impracticable... [and] Lead Plaintiff believes there are at least thousands of members of the proposed Class."  Amended Complaint ¶ 471.  In addition, attempting to join all Class Members solely for the purpose of opting out of the Third-Party Release at this stage would be extremely inefficient, costly, and time-consuming.  Even if the opt-out mechanism were appropriate with respect to the Class, the effort and cost necessary to belatedly contact all Class Members and solicit their opt-out elections would be substantial—and, because the Debtors failed to do so in connection with the solicitation of votes on the Plan, would take far more time than presently exists before the Opt-Out Deadline.  Common sense dictates that the most efficient and cost-effective means of enabling members of the Class to opt out of the Third-Party Release is for Lead Plaintiff, in the exercise of its statutory and fiduciary duties as a class representative, to do so on their behalf.

17

### (ii)   Commonality is Satisfied

49.     The threshold inquiry for commonality is whether there are any questions of fact or law that are common to the class.  Fed. R. Civ. P. 23(a)(2).  This "threshold of commonality is not high."  *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (citation omitted).  Not all class members need share identical claims; "factual differences among the claims of the putative class members do not defeat certification."  *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Id*. at 56; *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions)*, 148 F.3d 283, 310 (3d Cir. 1998) (citation omitted).  The commonality requirement is satisfied with respect to the singular issue of opting out of the Third-Party Release for several reasons.

50.     First, the potential impact of the Third-Party Release is identical for all members of the Class.  Absent a carve-out of the claims of the Class from the impact of the Third-Party Release, a class-wide opt-out will be the only means of preserving absent Class Members' claims against the Non-Debtor Defendants.

51.     Second, all Class Members are identically situated from a factual standpoint in the Chapter 11 Cases.  All Class Members (including Lead Plaintiff) hold claims against the Non-Debtor Defendants, who are potential beneficiaries of the Third-Party Release.  All members of the Class are receiving nothing under the Plan and are receiving nothing whatsoever for the threatened release of their valuable claims against the Non-Debtor Defendants—claims that the District Court has not dismissed.  Thus, the key questions of fact related to the Third-Party Release are indisputably common to Lead Plaintiff and all members of the Class, satisfying the commonality requirement.

### (iii)    Typicality is Satisfied.

52.     The typicality and adequacy requirements in Rules 23(a)(3) and (4) are designed to ensure that the named class members, such as Securities Plaintiffs, will adequately protect the interests of absent class members.  *See, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982).  Rule 23(a)(3) requires that "the claims or defenses of the class representative parties be typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality entails an inquiry into whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *Weiss v. York Hosp.*, 745 F.2d 786, 809 n. 36 (3d Cir. 1984).  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Prudential*, 148 F.3d at 311; *see also Baby Neal*, 43 F.3d at 57.  Similar to commonality, the typicality requirement does not mandate that all class members share identical claims.  *See Baby Neal*, 43 F.3d at 56.

53.     As discussed above, Lead Plaintiff's circumstances vis-à-vis the Third-Party Release are not just typical, but are completely *identical* to those of all absent Class Members. Lead Plaintiff, like all other members of the Class, is faced with a Third-Party Release that threatens to eviscerate its claims against the Non-Debtor Defendants in the Securities Litigation. Thus, Lead Plaintiff's claims, both in the Securities Litigation and in the narrow context of opting out of the Third-Party Release, are typical of the claims of the Class Members, and it is indisputable that the position of Lead Plaintiff with respect to the Third-Party Release is fully aligned with and typical of—indeed, identical to—that of Class Members.  Here, "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiff's claim as to that of the

19

other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) (citation omitted).  Accordingly, the typicality requirement is satisfied.

        **(iv)**    **Adequacy is Satisfied.**

54.      Rule 23(a)(4) requires that "the representative party will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  A class has adequate representation if (1) counsel for the named plaintiff is qualified, experienced, and generally able to conduct the action, and (2) the class representative's interests are not antagonistic to those of the unnamed members of the class. *See, e.g.*, *Prudential*, 148 F.3d at 312; *First Interregional*, 227 B.R. at 368–69.  The adequacy requirement is satisfied here.

55.      First, Lead Plaintiff's interests in connection with the Third-Party Release are completely aligned with those of all members of the Class.  Just as Lead Plaintiff stands to lose valuable claims against Non-Debtor Defendants if it does not opt out of the Third-Party Release, so will members of the Class—most or all of whom were never served with any notice of the Plan, the Third-Party Release, the Combined Hearing, or the Opt-Out Procedures—if Lead Plaintiff is not permitted to opt out on their behalf.  Lead Plaintiff's representation in this regard is not merely adequate, it is the *only* manner in which absent Class Members' valuable rights can be protected and preserved under the circumstances.

56.      Second, Lead Plaintiff is represented by Lead Counsel, Labaton Keller Sucharow LLP, with substantial experience in the prosecution and successful resolution of securities class action matters. Likewise, Lowenstein Sandler LLP, bankruptcy counsel retained by Lead Counsel on behalf of Lead Plaintiff and the Class, has substantial experience in complex chapter 11 bankruptcy matters and related class action proceedings.  Therefore, the adequacy requirement is satisfied.

### (v) The Requirements of Rule 23(b)(3) are Satisfied.

57.     In addition to the requirements of Rule 23(a), a party seeking certification of a class must also satisfy one of the prongs of Rule 23(b).  The additional requirements of Rule 23(b) overlap considerably with those of Rule 23(a), and with each other.  *See generally* 2 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 4:22 (4th ed. 2002). Here, such an analysis should be limited to the very narrow purpose for which Lead Plaintiff is seeking certification of the Class.

58.     Lead Plaintiff satisfies Rule 23(b)(3) by demonstrating that

> [q]uestions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  The first requirement of Rule 23(b)(3) can be characterized as the "predominance requirement," and the second, the "superiority requirement."  "The inquiry is mainly a pragmatic one: do the common issues justify a common adjudication?" *In re Telectronics Pacing Sys. Accutrial Atrial "J" Leads Prods. Liab. Litig.*, 172 F.R.D. 271, 287 (S.D. Ohio 1997). The Rule 23(b)(3) requirements are satisfied here because the Third-Party Release threatens the continuing viability of the Securities Litigation on a Class-wide basis, not on an individual basis. Moreover, the rights and claims Lead Plaintiff seeks to preserve on behalf of absent Class Members—direct securities fraud claims against Non-Debtor Defendants in the Securities Litigation—depend upon common issues of fact and law.[8]

---

[8]     The implied "ascertainability" requirement of Rule 23(b)(3), *see Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012), is satisfied here because the members of the Class can be identified through procedures routinely used in securities class actions.

**(1)      The Predominance Requirement is Satisfied.**

59.      The purpose of the predominance requirement is to ensure that a class is sufficiently cohesive to warrant adjudication by representation.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001).  "In order to predominate, the common issues must constitute a 'significant part' of the individual cases." *Meyer v. CUNA Mut. Grp.*, No. CIV.A. 03-602, 2006 WL 197122, at *22 (W.D. Pa. Jan. 25, 2006) (citation omitted). Rule 23(b)(3) requires that common issues "predominate," not that they be dispositive of the litigation, and not that individual issues be entirely absent.  *See also* Wright, Miller & Kane, § 1778.

60.      Importantly, in determining whether common issues predominate, the court's inquiry typically is directed primarily toward the issue of liability.  *In re Kaiser*, 278 B.R. at 67 (finding that "common questions of fact and law arising from the securities fraud claims predominate over the individual issues"); *accord Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 105 (E.D.N.Y. 2011).  However, this requirement should be relaxed somewhat in the present context, as Lead Plaintiff is not moving for certification of the Class for purposes of establishing liability.

61.      The predominance requirement is satisfied here.  The Third-Party Release is potentially an existential threat to the claims of every Class Member.  There are no individualized concerns that may differ for individual Class Members with respect to the Third-Party Release; the threat of being subject to a completely gratuitous release of valuable claims predominates Class-wide.  *See In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 142 (D.N.J. 1984) (common issues predominated where class members were united in their desire to establish the defendants' complicity and liability in the formulation and public dissemination of false and misleading information regarding its financial condition during the class period); *Lerch v. Citizens First*

22

*Bancorp, Inc.*, 144 F.R.D. 247, 252 (D.N.J. 1992) (predominance may be found in securities fraud cases if defendant's challenged activities stem from single, class-wide course of conduct, so that issue of statutory liability is common to the class).   Certification of the Class resolves this predominant, class-wide issue in an extremely efficient manner by permitting Lead Plaintiff to utilize the opt-out mechanism already contained in the Plan on behalf of all Class Members, without any modifications whatsoever to the Plan.

**(2)      The Superiority Requirement is Met.**

62.      A court must also find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b).  Courts consider four primary factors in determining whether a class action is superior pursuant to Fed. R. Civ. P. 23(b)(3):  (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum in which the class action is pending; and (4) difficulties likely to be encountered in the management of the class action.  See Fed. R. Civ. P. 23(b)(3).  Certification of the Class for the limited purpose set forth herein is superior to any other method—and, indeed, is likely the *only* method—of preserving the rights of the members of the Class.

63.      Courts have consistently embraced the class action device as a superior method of adjudicating violations of the federal securities laws. *Data Access*, 103 F.R.D. at 137 ("The nature of the securities laws is complex. . . . the interests of justice require . . . allowing the class action.") (citations omitted).  Courts have also recognized the necessity of the class action device in the bankruptcy context. *See, e.g.*, *Mortg. & Realty Tr.*, 125 B.R. 575, 580–82 (C.D. Cal. 1991).  Rule 23(b)(3) requires that class actions be superior to other methods for the fair and efficient

adjudication of the controversy. *Data Access*, 103 F.R.D. at 142. This determination necessarily involves a comparison of alternative mechanisms of dispute resolution.

64. That analysis is simple here: The Debtors failed to provide Class Members notice of the Opt-Out Deadline, and the opt-out mechanism is grossly inequitable in any event. Thus, certification of the Class is not only superior, but the *only* means of preserving the rights the Debtors seek to gratuitously strip away. Even if the Court were to determine that the opt-out mechanism is appropriate as applied to an impaired, non-voting class receiving nothing under the Plan, providing an opt-out notice at this stage would be expensive and complex and, paradoxically, would delay implementation of the Plan far more than simply certifying the Class for the limited purpose sought.

65. A Class-wide opt-out by Lead Plaintiff on behalf of the Class is by far the superior approach. Class Members have a compelling interest in not being required to individually locate, read, analyze, understand, and then affirmatively opt out of the Third-Party Release just to avoid unwittingly forfeiting rights for nothing. Most, if not all, Class Members have not been given any notice by the Debtors of the pendency of Plan confirmation, the potential impact of the Third-Party Release on the Securities Litigation, or of the mechanism for opting out of the Third-Party Release.

66. To preserve their rights individually, Class Members would need to independently (a) know of the existence of the Chapter 11 Cases, that the Plan is on file, and that confirmation is pending, (b) interpret a maze of Plan provisions and defined terms to ascertain that their claims against Non-Debtor Defendants in the Securities Litigation are potentially being released by virtue of their ostensible status as holders of "Claims," a bankruptcy-specific term that is subject to interpretation even among courts and sophisticated chapter 11 practitioners, (c) locate the opt-out election form, (d) complete the release opt-out form, and (e) return the release opt-out form to the

24

Debtors' noticing agent by the Opt-Out Deadline—all in a case where Class Members are not slated to receive a distribution and have no reason to believe their involvement in the Plan process is necessary. On the other hand, a Class-wide opt-out simply (and properly) excludes all Class Members from the impact of the Third-Party Release. The class device is not just a superior means of protecting Class Members' rights. It is the only reasonable means of ensuring that their rights are protected.

### (3)    This Matter is Well-Suited for Class Treatment.

67.    Lead Plaintiff seeks certification of the Class for the sole and limited purpose of authorizing them to opt out of the Third-Party Release on behalf of the Class (to the extent they do not have such authority already). There is no better example of a proceeding where the class device is appropriate. Certification of the Class for the limited purpose sought herein would provide a fair and efficient manner of preserving the rights of potentially thousands of injured Class members whose rights against the Non-Debtor Defendants otherwise stand to be forfeited without any consideration whatsoever. *Gen. Tel. Co. of the Sw.*, 457 U.S. at 155 ("'[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" (citation omitted)).

68.    The burden of reaching even a cursory understanding of the operation and impact of the Third-Party Release is a daunting exercise that is all but impossible without the advice of counsel. Therefore, Class Members are exceedingly unlikely even to recognize the need to do so where they are receiving absolutely nothing under the Plan. It is not just impracticable for individual Class Members to individually assert their rights, it is nearly impossible because Class

Members cannot even know what their rights are without a material investment of time, effort, and legal fees.

69.     Accordingly, this case meets the standards for superiority and is well suited for the limited class treatment sought.  Permitting Lead Plaintiff to opt out of the Third-Party Release on behalf of the Class is a superior method, and likely the only plausible method, to preserve Class Members' rights outside of a successful objection to the Third-Party Release that would altogether threaten confirmation.

## RESERVATION OF RIGHTS

70.     Lead Plaintiff (individually and on behalf of the Class) reserves all rights, arguments, and objections in connection with confirmation of the Plan, including but not limited to the right to argue that the opt-out mechanism contemplated by the Plan is an inappropriate and illegal means of manufacturing "consent" to the Third-Party Release by any members of the Class, who, among other things, are receiving nothing under the Plan.

## CONCLUSION

71.     For the reasons set forth above, Lead Plaintiff submits that it is essential that it be authorized (to the extent it does not have the authority already) to opt out of the Third-Party Release on behalf of the Class and thereby preserve Class Members' claims against the Non-Debtor Defendants in the Securities Litigation.

[ *signature page follows*]

26

**WHEREFORE**, Lead Plaintiff respectfully request that the Court enter an order (a) authorizing Lead Plaintiff (or finding that it has such authority) to opt out of the Third-Party Release on behalf of the Class or, in the alternative, (b) certifying the Class for the limited purpose of permitting Lead Plaintiff to opt out of the Third-Party Release on behalf of the Class.

Dated:  March 24, 2025

**LOWENSTEIN SANDLER LLP**

 /s/ Andrew Behlmann
Michael S. Etkin, Esq. (*pro hac vice*)
Andrew Behlmann (S.D. Tex. Bar No. 3145648)
Carolyn Gauvin (*pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Tel:        (973) 597-2500
Email:      metkin@lowenstein.com
Email:      abehlmann@lowenstein.com
Email:      cgauvin@lowenstein.com
                      -and-
Lindsay H. Sklar (*pro hac vice*)
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Email:      lsklar@lowenstein.com
*Bankruptcy Counsel to Lead Plaintiff and the Class*

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty
Michael H. Rogers
Nicholas Manningham
140 Broadway
New York, New York 10005
Tel:        (212) 907-0700
Email:      mcanty@labaton.com
Email:      mrogers@labaton.com
Email:      nmanningham@labaton.com
*Attorneys for Lead Plaintiff and the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Tel:        (510) 725-3000
Email:       lucasg@hbsslaw.com
*Liaison Counsel for the Class*

27

28

**CERTIFICATION OF SERVICE**

I certify that on March 24, 2025, a true and correct copy of the foregoing document was served through the Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Andrew Behlmann*
Andrew Behlmann

**<u>EXHIBIT A</u>**
**LEAD PLAINTIFF ORDER**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

ERIE COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly
Situated,

                       Plaintiff,

v.

CUTERA, INC., DAVID H. MOWRY,
ROHAN SETH, and J. DANIEL PLANTS,

                       Defendants.

Case No. 4:23-cv-02560-JST

**CLASS ACTION**

**[PROPOSED]** **ORDER FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

[PROPOSED] ORDER
CASE NO. 23-CV-02560-JST

Having considered the motion of New England Teamsters Pension Fund ("New England Teamsters") for appointment as Lead Plaintiff and approval of selection of Lead Counsel (the "Motion"),

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. This order (the "Order") shall apply to the above-captioned action (the "Action") and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court, and is consolidated with the Action.

3. A Master File is established for this proceeding. The Master File shall be Civil Action No. 3:23-cv-02560-JST. The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket. Every pleading in the Action shall have the following caption: *In re Cutera, Inc. Securities Litigation,* No. 3:23-cv-02560-JST (N.D. Cal.).

4. Each new case that arises out of the subject matter of the Action shall be consolidated with the Action. This Order shall apply thereto, unless a party objects to consolidation (as provided for herein), or to any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party by filing an application for relief, and this Court deems it appropriate to grant such application. Nothing in the foregoing shall be construed as a waiver of Defendants' right to object to the consolidation of any subsequently-filed or transferred related action.

5. New England Teamsters is appointed to serve as Lead Plaintiff in the Action pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

6. New England Teamsters' selection of Labaton Sucharow LLP as Lead Counsel for the Class is approved pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Lead Counsel shall have the authority to speak for all Plaintiffs and Class members in all matters regarding the litigation, including, but not limited to, pretrial proceedings, motion practice, trial, and settlement. Lead Counsel shall make all work assignments in such a manner as to facilitate the orderly and efficient prosecution of this litigation, and to avoid duplicative or unproductive effort. Additionally, Lead Counsel shall have the following responsibilities:

a. to brief and argue motions;

b. to initiate and conduct discovery, including, but not limited to, coordination of discovery with Defendants' counsel, and the preparation of written interrogatories, requests for admissions, and requests for production of documents;

c. to direct and coordinate the examination of witnesses in depositions;

d. to act as spokesperson at pretrial conferences;

e. to call and chair meetings of Plaintiffs' counsel as appropriate or necessary from time to time;

f. to initiate and conduct any settlement negotiations with Defendants' counsel;

g. to provide general coordination of the activities of Plaintiffs' counsel and to delegate work responsibilities to selected counsel as may be required, in such a manner as to lead to the orderly and efficient prosecution of this litigation and to avoid duplication or unproductive effort;

h. to consult with and employ experts;

i. to receive and review periodic time reports of all attorneys on behalf of Plaintiffs, to determine if the time is being spent appropriately and for the benefit of Plaintiffs, and to determine and distribute Plaintiffs' attorneys' fees; and

j. to perform such other duties as may be expressly authorized by further order of this Court.

7. New England Teamsters' selection of Hagens Berman Sobol Shapiro LLP as Liaison Counsel for the Class in the Action is approved.

**IT IS SO ORDERED.**

DATED: _____August 30_____, 2023

_____
Honorable Jon S. Tigar
United States District Judge
Northern District of California

**EXHIBIT B**
**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| *In re*:<br><br>Cutera, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-90088 (ARP) |

**ORDER GRANTING MOTION OF SECURITIES LITIGATION LEAD PLAINTIFF FOR ENTRY OF AN ORDER (I) AUTHORIZING THE LEAD PLAINTIFF TO OPT OUT OF THIRD-PARTY RELEASE ON BEHALF OF THE CLASS OR CONFIRMING SUCH AUTHORITY OR, ALTERNATIVELY, (II) CERTIFYING THE CLASS FOR A LIMITED PURPOSE**

Upon the motion (the "Motion")[2] of New England Teamsters Pension Fund ("Lead Plaintiff") for an order authorizing or confirming the authority of Lead Plaintiff to opt out of the Third-Party Release on behalf of the Class, or certifying the Class for the limited purpose of enabling Lead Plaintiff to opt out of the Third-Party Release on behalf of the Class; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is necessary and appropriate under the circumstances; and Lead Plaintiff having provided appropriate notice of the Motion; and the Court having reviewed the Motion; and the Court having

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cutera, Inc. (2262) and Crystal Sub, LLC (6339). The Debtors' service address is 3240 Bayshore Boulevard, Brisbane, CA 94005.

[2]   Capitalized terms used but not defined herein have the meanings ascribed thereto in the Motion.

determined that the legal and factual bases set forth in the Motion to Shorten establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. Lead Plaintiff is authorized to opt out of the Third-Party Release on behalf of the Class.

3. Any Opt-Out Form previously or hereafter submitted to the Debtors' noticing agent by Lead Plaintiff on behalf of the Class is hereby deemed valid notwithstanding any noncompliance with or modifications to the form of the Opt-Out Form annexed to the Confirmation Procedures Order and/or attached to the solicitation materials.

4. The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Date: _____, 2025

_____
HONORABLE ALFREDO R. PEREZ
UNITED STATES BANKRUPTCY JUDGE

2