United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 28, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Cutera, Inc., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-90088 (ARP)<br><br>(Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING
DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,
(C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) PERFORM CERTAIN
INTERCOMPANY TRANSACTIONS AND (II) GRANTING RELATED RELIEF**
[Relates to Docket Nos. 15, 73]

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order and this final order (the "Order"): (i) authorizing the Debtors in their sole discretion, to (a) continue to operate their Cash Management System, (b) pay any prepetition or post-petition amounts outstanding on account of the Bank Claims, (c) maintain existing Business Forms in the ordinary course of business, and (d) continue to perform Intercompany Transactions consistent with historical practice, and (ii) granting related relief all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of these cases and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cutera, Inc. (2262) and Crystal Sub, LLC (6339). The Debtors' service address is 3240 Bayshore Boulevard, Brisbane, CA 94005-1021.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if necessary, before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

    IT IS HEREBY ORDERED THAT:

1. The Debtors are authorized, but not directed, to maintain and use the Cash Management System as described in the Motion subject to any modification provided herein.

2. The Debtors are authorized to open new bank accounts or close any existing bank accounts as they may deem necessary and appropriate in their sole discretion; *provided that* (a) the Debtors shall give five (5) days advance notice to the U.S. Trustee, counsel to the Ad Hoc Committee of Consenting Senior Noteholders, and any statutory committees appointed in these chapter 11 cases, and (b) any new bank account shall be at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee for the Southern District of Texas, or at such bank that is willing to immediately execute such an agreement. The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

3. In each instance in which the Debtors hold an account at a Bank that is a party to a Uniform Depository Agreement with the U.S. Trustee, within 15 days from the date of entry of

this Order, the Debtors shall (a) contact the Bank, (b) provide the Bank with each of the Debtors' employer identification numbers, and (c) identify each of their accounts held at the Bank as being held by a debtor in possession.

4.  To the extent any Bank Account existing as of the Petition Date is not in compliance with section 345(b) of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines, the Debtors have until April 21, 2025 (or such additional time to which the U.S. Trustee may agree) to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; *provided* that nothing in the foregoing shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee). For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their commercially reasonable good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee by April 21, 2025 (or such further time to which the U.S. Trustee may agree). The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

5.  The Debtors' Bank Accounts are deemed debtor in possession accounts. The Debtors are authorized to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date, including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund

transfers, and other debits or items presented, issued, or drawn on the Bank Accounts, (b) to pay ordinary course Bank Claims in connection with the Bank Accounts, including, subject to paragraph 8 of this Order, any Bank Claims arising prior to the Petition Date, and (c) to perform their obligations under the documents and agreements governing the Bank Accounts, including without limitation, any prepetition Cash Management System agreements or treasury management services agreements.

6. Those certain existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition Cash Management System relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

7. The Debtors are authorized to pay or reimburse their Banks and service providers in the ordinary course of business for any Bank Claims arising prior to the Petition Date.

8. The Banks are authorized without the need for further order of this Court to, in the ordinary course of business, (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a claim; and (c) debit the Bank Accounts for (i) all undisputed prepetition bank and service fees outstanding as of the date hereof, if any, owed to the Banks for the maintenance of the Cash Management System; (ii) all checks drawn on the Debtors' Bank Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (iii) all checks or other items deposited in one of the Debtors' Bank Accounts with such Bank prior

to the Petition Date, which have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date.

9. Subject to the provisions of this Order, the Banks are authorized to and shall rely on the representations of the Debtors as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated, drawn, or issued prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court. The Banks shall not be deemed in violation of this Order and shall have no liability for relying on such representations by the Debtors or honoring any Disbursement that is subject to this Order either (a) at the direction of the Debtors to honor such prepetition Disbursement, (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures. To the extent that the Debtors direct that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court.

10. The Banks are further authorized to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account, and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

11. To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to this Order.

12. The Debtors shall serve a copy of this Order on the Banks within five (5) business days of the entry of this Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

13. In connection with the ongoing use of their Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions. The Debtors and the Banks may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business and not inconsistent with this Order that they deem appropriate in their sole discretion, including, without limitation, closing any of the Bank Accounts or opening new bank accounts as set forth herein.

14. Notwithstanding anything herein, the Debtors shall provide notice to the U.S. Trustee, counsel to the Ad Hoc Committee of Consenting Senior Noteholders, and any statutory committee appointed in these chapter 11 cases of any material changes to their Cash Management System.

15. The Debtors shall continue to maintain records related to the Intercompany Transactions, so that transactions can be ascertained, traced, and accounted for on applicable intercompany accounts, and distinguished between prepetition and post-petition transactions.

16. The Debtors are authorized to continue to use their existing Business Forms without alteration or change and without the designation "Debtor in Possession" imprinted upon them; *provided, however,* once the Debtors' existing checks have been used, the Debtors, when reordering checks, shall require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further that*, with respect to checks which the

Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

17.     The Debtors are authorized to continue engaging in Intercompany Transactions in the ordinary course of business consistent with the Debtors' prepetition practices, including transferring funds through the Cash Management System.  The Intercompany Claims arising postpetition against any Debtor relating to the Intercompany Transactions shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code based upon net transfers.

18.     The Debtors are authorized to continue the Company Card Program in the ordinary course of business, including paying any prepetition and postpetition Company Card Expenses.

19.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees payable under 28 U.S.C. § 1930(a)(6) based on the disbursements of (or on behalf of) the Debtors regardless of which entity actually makes such disbursements.

20.     Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made and any relief or authorization granted hereunder shall be limited by and subject to the requirements imposed on the Debtors in any orders entered by this Court authorizing the Debtors to obtain postpetition financing (such orders, the "DIP Order"), including, for the avoidance of doubt, the debtor-in-possession budgets.  To the extent of any conflict (but solely to the extent of such conflict) between the terms of this Order and the terms of the DIP Order, the terms of the DIP Order will govern.

21. Nothing in this Order nor any actions taken hereunder (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors; or (e) except with respect to the Intercompany Transactions, shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

22. The requirements of Bankruptcy Rule 6003 are satisfied.

23. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof and notice of the Motion as provided therein shall be deemed good and sufficient pursuant to the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

24. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

25. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: March 28, 2025

Alfredo R Pérez
United States Bankruptcy Judge